**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICIA WIRTHWEIN, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| MEREDITH CORPORATION, THOMAS H. HARTY, and JOSEPH CERYANEC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Patricia Wirthwein ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Meredith Corporation ("Meredith" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Meredith; and (c) review of other publicly available information concerning Meredith.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Meredith securities between May 10, 2018 and September 4, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Meredith is a media company that distributes content through print, digital, mobile, video, and broadcast television. It operates under two business segments, national media and local media. In January 2018, Meredith acquired Time Inc. ("Time") for $3.2 billion.

3.      On September 5, 2019, the Company stated that it expected fiscal 2020 adjusted EBITDA in the range of $640 million to $675 million, which is well below analysts' expectations of $793 million. Meredith planned to increase spending to improve operations of Time because the business was not as profitable as expected.

4.      On this news, the Company's share price fell $10.14 per share, or over 23%, to close at $33.68 per share on September 5, 2019, on unusually high trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Time, Inc. acquisition was not as profitable as the Company had claimed; (2) that the Company would

incur additional costs for strategic investments to improve the Time business; (3) that, as a result, the Company's earnings would be materially and adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company has offices in this District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.      Plaintiff Patricia Wirthwein, as set forth in the accompanying certification, incorporated by reference herein, purchased Meredith securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading

statements and/or material omissions alleged herein.

12.     Defendant Meredith is incorporated under the laws of Iowa with its principal executive offices located in Des Moines, Iowa. Meredith's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "MDP."

13.     Defendant Thomas H. Harty ("Harty") was, at all relevant times, the Chief Executive Officer ("CEO") and a Director of the Company.

14.     Defendant Joseph Ceryanec ("Ceryanec") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company.

15.     Defendants Harty and Ceryanec (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Meredith is a media company that distributes content through print, digital, mobile, video, and broadcast television. It operates under two business segments, national media and local media. In January 2018, Meredith acquired Time for $3.2 billion.

**Materially False and Misleading**
**Statements Issued During the Class Period**

17.    The Class Period begins on May 10, 2018. On that day, the Company announced

its third quarter 2018 financial results in a press release, stating:

> **Looking more closely at Meredith's fiscal 2018 third-quarter results**
> **compared to the prior-year quarter:**
>
> - Meredith recorded pre-tax special items of $170 million, primarily comprised of restructuring, financing and transaction costs related to its acquisition of Time Inc. As a result, Meredith reported a loss from continuing operations of $95 million and a net loss of $110 million, compared to net earnings of $40 million.
>
> - Excluding special items, earnings from continuing operations were $33 million, compared to $40 million. (See Tables 1-5 for supplemental disclosures regarding non-GAAP financial measures.)
>
> - Adjusted EBITDA was $111 million, compared to $83 million.
>
> - Total company revenues from continuing operations were $649 million, compared to $425 million.

18.    On May 15, 2018, the Company filed its quarterly report on Form 10-Q for the

period ended March 31, 2018, affirming the previously reported financial results. Regarding the

Time acquisition, the report stated, in relevant part:

> On January 31, 2018, Meredith completed its acquisition of all the outstanding shares of Time Inc. (Time) for $18.50 per share, for a total transaction value of $3.2 billion, including the repayment of Time's outstanding debt. As a result, Time has become a wholly owned subsidiary of Meredith. The combination of Meredith and Time creates a premier media and marketing company serving 175 million American consumers that's positioned for growth across industry-leading digital, television, print, video, mobile, and social platforms. Combined, Meredith's brands now have a readership of more than 120 million and paid circulation of nearly 45 million, with leading positions in celebrity, food, lifestyle, parenting, and home content creation, as well as enhanced positions in the beauty, fashion, and luxury advertising categories. The majority of Time's operations are reported in Meredith's national media segment. February 1, 2018, was the first day of operations for the combined company.
>
> Meredith anticipates generating over $500 million in annual cost synergies within the first two full years of combined operations. Approximately half of these savings are expected to come from reductions in headcount, and the remaining

half from savings in vendor contracts, real estate, and other non-headcount-related activities. The Company currently estimates that it will incur costs of approximately $300 million related to integration, which include severance and portfolio alignments, to achieve these synergies. These costs are expected to be spread evenly between the first two years of operations. The Company continues to fully develop its integration plan.

19.     On August 10, 2018, the Company announced its fourth quarter and full year 2018 financial results and touted the purported benefits of the Time acquisition. In a press release, the Company stated, in relevant part:

> "**We have positioned Meredith Corporation on a growth track not realizable absent this acquisition**, while continuing to pay a very attractive dividend to our shareholders," said Meredith Corporation Executive Chairman Stephen M. Lacy. "In fiscal 2018, we continued to strengthen our leading national and local media brands while adding powerful new brands such as People, InStyle, Southern Living and Real Simple, creating the most attractive portfolio in the marketplace."
>
> * * *
>
> "Our legacy Meredith businesses continue to perform in-line with our expectations, and we are very pleased with the progress being made on integrating the acquired Time Inc. properties," said Meredith Corporation President and CEO Tom Harty. "We expect to see meaningful improvement in advertising results for the acquired Time Inc. brands during fiscal 2019. We are on track to deliver more than $500 million of annual synergies in the first two full years of operations. These synergies are already being reflected in our results as we significantly improved adjusted EBITDA margins year-over-year in our National Media Group in the fourth quarter of fiscal 2018. We expect significant margin improvement in fiscal 2019 as well. (See Tables 4-5.)
>
> "Given the progress made on synergy achievement and asset divestitures, we expect to achieve our goals of reducing debt by $1 billion by the end of fiscal 2019 and **generating $1 billion of adjusted EBITDA in fiscal 2020, meaningfully contributing to total shareholder return**," added Harty.

**<u>FISCAL 2018 FULL-YEAR REVIEW</u>**

Meredith continued to aggressively execute a series of well-defined strategic initiatives in fiscal 2018 to generate growth in revenue and operating profit, and increase shareholder value over time. These included:

1)    **The transformational acquisition of Time Inc., which:**

- **Creates an unparalleled portfolio of national media brands with greater scale and efficiency** . . .

- **Advances Meredith's digital position by adding significant scale** . . .

- **Accelerates consumer revenue diversification and growth** – Meredith expects more than 45 percent of fiscal 2019 National Media Group revenues to be generated from high margin consumer-related sources, including subscription activities, brand licensing and e-commerce.

- **Enhances financial scale and flexibility** – Meredith anticipates generating annual cost synergies exceeding $500 million in the first two full years of combined operations. ***Meredith has an excellent track record of achieving cost synergies with prior acquisitions, and is confident in its ability to optimize the cost structure of the combined business.***

20.     On September 4, 2018, the Company filed its annual report on Form 10-K for the period ended June 30, 2018 (the "2018 10-K"), affirming the previously reported financial results. Regarding the ability to realize the purported benefits of the Time acquisition, the 2018 10-K stated under "Risk Factors," in relevant part:

> **The Company may fail to realize all of the anticipated benefits of the acquisition of Time, those benefits may take longer to realize than expected, or the Company may encounter significant difficulties in integrating Time's business into our operations. If the acquisition does not achieve its intended cost savings results, the business, financial condition, and results of operations could be materially and adversely affected.** Although the Company currently estimates annual cost synergies in excess of $500 million within the first two full years of combined operation and incurring costs to achieve those synergies of approximately $300 million spread evenly between the first two years of operation, actual synergies and cost savings could differ materially from our current expectations. Our ability to realize the anticipated benefits resulting from the acquisition of Time, including anticipated synergies, will depend, to a large extent, on our ability to integrate Time's business into our existing operations. In addition, these synergies and cost savings are based on estimates and assumptions made that are inherently uncertain, and are subject to significant business, economic, and competitive uncertainties and contingencies, all of which are difficult to predict and many of which are beyond our control.

21.     Moreover, regarding costs associated with the Time acquisition, the 2018 10-K stated, in relevant part:

> **Significant costs associated with the acquisition will be incurred.** We have incurred and will incur substantial expenses as a result of the acquisition of Time including expenses in connection with coordinating the businesses, operations, policies, and procedures. These expenses include expenses we will incur in connection with achieving synergies, and expenses associated with the new

indebtedness that we incurred in connection with the acquisition. While we have assumed that a certain level of integration expenses will be incurred, factors beyond our control could affect the total amount or the timing of these expenses. Many of the expenses that will be incurred, by their nature, are difficult to estimate accurately.

22.     On November 7, 2018, the Company announced its first quarter 2019 financial

results in a press release that stated, in relevant part:

Compared to the prior year period:

- Total Company revenues from continuing operations grew more than 90 percent to $757 million, and total advertising related revenues more than doubled to $423 million.

- Earnings from continuing operations, including special items in both periods, were $16 million, compared to $33 million. Meredith recorded $14 million of net special items in the first quarter of fiscal 2019, primarily related to restructuring and integration costs.

- Excluding special items, earnings from continuing operations were $30 million, compared to $31 million. (See Tables 1-4 for supplemental disclosures regarding non-GAAP financial measures.)

- Adjusted EBITDA more than doubled to $143 million.

"We are off to a strong start in fiscal 2019, delivering results that exceeded expectations," said Meredith Corporation President and Chief Executive Officer Tom Harty. "Performance was driven by record demand for political advertising in our Local Media Group, and improved sequential comparable print advertising performance along with strong expense discipline in our National Media Group. As a result, we delivered significantly improved year-over-year adjusted EBITDA and margins, which we expect will continue through fiscal 2019.

"Looking ahead to the second fiscal quarter, we see continued record political advertising in our Local Media Group and continued improving advertising performance in our National Media Group," Harty added. "We continue to expect to achieve our goals of reducing debt by $1 billion by the end of fiscal 2019 and generating $1 billion of adjusted EBITDA in fiscal 2020, meaningfully contributing to total shareholder return."

23.     On November 9, 2018, the Company filed its quarterly report on September 30,

2018, affirming the previously reported financial results.

24.     On February 11, 2019, the Company announced its second quarter 2019 financial

results in a press release that stated, in relevant part:

Compared to the prior year period:

- Total Company revenues from continuing operations more than doubled to $854 million.

- Total advertising related and consumer related revenues each also more than doubled to $489 million, and $337 million, respectively.

- Earnings from continuing operations, which includes special items in both periods, were $87 million compared to $159 million. The prior year results reflected a benefit of $133 million from the passage of the "Tax Cuts and Jobs Act of 2017" in December 2017. Earnings per share from continuing operations were $1.43 compared to $3.49. Meredith recorded a net after-tax charge of $5 million related to special items in the second quarter of fiscal 2019.

- Excluding special items in both periods, earnings from continuing operations increased to $92 million compared to $52 million, and earnings per share increased to $1.53 compared to $1.14. (See Tables 1-3 for supplemental disclosures regarding non-GAAP financial measures.)

- Adjusted EBITDA more than doubled to $231 million compared to $85 million. Adjusted earnings per share increased to $2.55 compared to $1.34. (See Tables 1-3 for supplemental disclosures regarding non-GAAP financial measures.)

"We were pleased to deliver stronger-than-expected revenue, profit and related margin performance in the first half of fiscal 2019, and we are excited about our significantly improved second half advertising outlook," said Meredith Corporation President and Chief Executive Officer Tom Harty. "In addition, due to strong Company performance so far in fiscal 2019 and proceeds from non-strategic asset sales, we have reduced debt by $700 million, well on our way to delivering our $1 billion debt reduction goal. We also grew our dividend by 5.5 percent, and renewed both our robust brand licensing program at Walmart and our station affiliations for all five of our FOX markets with favorable terms."

25.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended December 31, 2018, affirming the previously reported financial results.

26.     On May 10, 2019, the Company announced its third quarter 2019 financial results in a press release that stated, in relevant part:

Compared to the prior-year period:

- Total Company revenues from continuing operations grew 14 percent to $743 million.

- Total advertising related and consumer related revenues rose in the double-digits.

- Earnings from continuing operations, which includes special items in both periods, were $28 million, compared to a loss of $95 million. Meredith recorded $15 million of net after-tax special items in the third quarter of fiscal 2019, primarily related to restructuring and integration costs. Results in the prior-year period reflected $128 million of net after-tax special items, primarily comprised of restructuring, transaction, and financing costs related to its acquisition of Time Inc. Earnings per share from continuing operations were $0.20 compared to a loss per share of $2.41.

- Excluding special items in both periods, earnings from continuing operations increased 29 percent to $43 million compared to $33 million, and earnings per share increased to $0.52 from $0.45. (See Tables 1-3 for supplemental disclosures regarding non-GAAP financial measures.)

- Adjusted EBITDA grew 43 percent to $160 million compared to $112 million. Adjusted earnings per share increased to $1.52 from $1.11. (See Tables 1-3 for supplemental disclosures regarding non-GAAP financial measures.)

* * *

Harty continued: "Looking to the fourth quarter, we see revenue trends pacing ahead of our expectations, including continued improvement in National Media Group advertising revenues. At the same time, we are making strategic investments in our portfolio and capabilities, including new digital platforms, more robust video production and initiatives to grow consumer related revenues such as Apple News+, subscription acquisition, and our e-commerce activities. We remain focused on successfully integrating our acquisition of Time and have already delivered on a majority of the stated synergies.

"As a result, we believe it will take longer than originally anticipated to achieve the remainder of the synergies due to investment spending to grow the business; retaining certain employees longer than anticipated to ensure business continuity; and operating the Assets Held for Sale longer than expected. ***However we remain confident we will achieve our $550 million cost synergy goal by the end of fiscal 2020***," Harty concluded.

(Emphasis added.)

27.     On May 14, 2019, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2019, affirming the previously reported financial results.

28.     On August 29, 2019, the Company filed a Notification of Late Filing on Form

12b-25 with the SEC stating that it was unable to timely file its annual report for fiscal 2019. The Form stated, in relevant part:

> Meredith Corporation (Meredith or the Company) is unable, without unreasonable effort or expense, to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2019, within the prescribed time period because it requires additional time to complete its financial statements and its assessment of the Company's internal control over financial reporting; accordingly, the Company's independent registered accounting firm, KPMG LLP, has not yet completed its audits of the Company's financial statements and the Company's internal control over financial reporting as of June 30, 2019. Meredith anticipates that it will file its Annual Report on Form 10-K for the fiscal year ended June 30, 2019, as soon as possible and within the fifteen-day grace period provided by Rule 12b-25 of the Securities Exchange Act of 1934, as amended.

29.     The above statements identified in ¶¶ 17-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) the Time, Inc. acquisition was not as profitable as the Company had claimed; (2) that the Company would incur additional costs for strategic investments to improve the Time business; (3) that, as a result, the Company's earnings would be materially and adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

30.     On September 5, 2019, the Company expected fiscal 2020 adjusted EBITDA in the range of $640 million to $675 million, which is well below analysts' expectations of $793 million. Meredith planned to increase spending to improve operations of Time because the business was not as profitable as expected. In a press release announcing fiscal 2019 financial results, the Company stated, in relevant part:

> **Looking more closely at fiscal 2019 full-year results compared to the prior year:**
>
> - Total Company revenues from continuing operations were up more than 40 percent to a record $3.2 billion.

- Total Company advertising related and consumer related revenues recorded double-digit growth.

- Earnings from continuing operations, which includes special items in both periods, were $129 million, compared to $114 million. Meredith recorded $94 million of net after-tax special items in fiscal 2019, primarily related to restructuring and integration costs related to the Time Inc. acquisition, and a non-cash impairment charge related to certain trademarks. Earnings per share from continuing operations were $1.12 compared to $1.79.

- Earnings from continuing operations before special items increased 51 percent to $223 million, compared to $148 million, and increased on a per share basis to $3.19 from $2.54. (See Tables 1-3 for supplemental disclosures regarding non-GAAP financial measures.)

- Adjusted EBITDA was $706 million compared to $423 million. Adjusted earnings per share increased to $7.24 from $4.67.

* * *

"Without a doubt, the Time Inc. acquisition has dramatically improved our competitive position in the marketplace, lifting Meredith from the #4 player to #1," said Harty. "That said, we begin fiscal 2020 at a lower profit point than originally expected. In addition, we are planning strategic investments to further strengthen our performance and maximize shareholder value over time. Both of these factors contribute to a reset of our financial expectations in the outlook we're providing."

* * *

**For full-year fiscal 2020, Meredith expects:**

- Total Company revenues to range from $3.0 billion to $3.2 billion.

- Earnings from continuing operations, including non-cash depreciation and amortization of approximately $220 million and net interest expense of approximately $150 million, to range from $197 million to $212 million, and from $2.58 to $2.88 on a per share basis. These amounts do not include special items. Actual results may include special items that have not yet occurred and are difficult to predict with reasonable certainty at this time.

- Adjusted EBITDA to range from $640 million to $675 million, and adjusted earnings per share to range from $5.75 to $6.20. This includes approximately $50 million of planned strategic investments. (See Tables 4-5 for supplemental disclosures.)

- Additionally, Meredith expects to generate approximately $75 million of proceeds from its remaining Assets Held for Sale and intends to use that cash for further debt reduction.

31.    On this news, the Company's share price fell $10.14 per share, or over 23%, to close at $33.68 per share on September 5, 2019, on unusually high trading volume.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Meredith securities between May 10, 2018 and September 4, 2019, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

33.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Meredith's common shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Meredith common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Meredith or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)      whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Meredith; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

37.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

38.      The market for Meredith's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Meredith's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Meredith's securities relying upon the integrity of the market price of the Company's securities and market information relating to Meredith, and have been damaged thereby.

39.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Meredith's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially

false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Meredith's business, operations, and prospects as alleged herein.

40.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Meredith's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

41.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

42.     During the Class Period, Plaintiff and the Class purchased Meredith's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

43.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Meredith, their control over, and/or receipt and/or modification of Meredith's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Meredith, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

44.    The market for Meredith's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Meredith's securities traded at artificially inflated prices during the Class Period.  On April 15, 2019, the Company's share price closed at a Class Period high of $60.44 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Meredith's securities and market information relating to Meredith, and have been damaged thereby.

45.    During the Class Period, the artificial inflation of Meredith's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Meredith's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Meredith and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

46.     At all relevant times, the market for Meredith's securities was an efficient market for the following reasons, among others:

(a)     Meredith shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Meredith filed periodic public reports with the SEC and/or the NYSE;

(c)     Meredith regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Meredith was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

47.     As a result of the foregoing, the market for Meredith's securities promptly digested current information regarding Meredith from all publicly available sources and reflected such information in Meredith's share price. Under these circumstances, all purchasers of Meredith's securities during the Class Period suffered similar injury through their purchase of Meredith's securities at artificially inflated prices and a presumption of reliance applies.

48.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment

decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

49.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Meredith who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Meredith's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

52.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Meredith's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Meredith's financial well-being and prospects, as specified herein.

54.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Meredith's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Meredith and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

55.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans,

projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

56.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Meredith's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Meredith's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Meredith's securities during the Class Period at artificially high prices and were damaged thereby.

58.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Meredith was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Meredith securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

61.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.    Individual Defendants acted as controlling persons of Meredith within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements

to be corrected.

63.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.     As set forth above, Meredith and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 6, 2019

**GLANCY PRONGAY & MURRAY LLP**

By: s/ *Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lportnoy@glancylaw.com

-and-

Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Patricia Wirthwein*

## SWORN CERTIFICATION OF PLAINTIFF

Meredith Corporation, **SECURITIES LITIGATION**

I, Patricia Wirthwein, certify:

1.  I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2.  I did not purchase Meredith Corporation, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Meredith Corporation, during the class period set forth in the Complaint are as follows:

      See Attached Transactions

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

      ____ Check here if you are a current employee or former employee of the defendant Company.

      I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: Sep 6, 2019                    Patricia Wirthwein
                                      (Please Sign Your Name Above)

(REDACTED)

### Patricia Wirthwein's Transactions in Meredith Corporation (MDP)

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 8/16/2019 | Bought | 100 | $44.5400 |